UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

PECOS DIVISION

**FILED**

FEB - 8 2012

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

GUSTAVO ALVAREZ-FRAYIER

V.

UNITED STATES OF AMERICA; WARDEN, RCDC III;    **P12 CV033**

BUREAU OF PRISONS; GEO GROUP                   CASE NO:

## § 2241 PETITION FOR RELIEF
## VIOLATION OF DUE PROCESS AND LIBERTY INTEREST

Petitioner, Alvarez-Frayier,   hereby files this Motion for Relief pursuant to § 2241 seeking a ruling from the Court, that if granted, would affect the length of the sentence to be served. The Fifth Circuit has held that the Court has subject matter jurisdiction to act in this matter. Cervante v. USA, 10-50248 (11/18/2010).

Once jurisdiction is established, it is the duty of the Court to fashion the appropriate modes of procedure to assist them in conducting enquiries, such authority was expressly confirmed in the All Writs Act, 28 § 1651; Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049 (1948).

Petitioner submits that this petition is properly filed in the correct district court naming the proper Respondents; Padilla, 124 S.Ct. 2718; he is in custody pursuant to § 2241(d), Matus-Leva, 287 F.3d 761; he is alleging an injury traceable to the actions of

1

the Respondents that affects the length of his sentence, Muhajid, 413 F.3d 991; and he is seeking relief through this court in the form of a possible reduction in the term of confinement. Gunderson, 268 F.3d 1153.

Where a Petitioner challenges the execution of a sentence in contrast to the imposition of a sentence, that challenge is then properly filed pursuant to § 2241. Chambers, 106 F.3d 474; Cervantes, supra. Petitioner submits that the B.O.P. lacks the authority to pass a rule that excludes otherwise eligible prisoners from a grant of early release under § 3621 and § 3624, Lopez v. Davis, 531 U.S. 230, 121 S.Ct. 714 (2001), and that final regulation violates the Administrative Procedure Act. Arrington v. Daniels, 516 F.3d 1106.

Petitioner alleges that the Respondents conspired to deprive him of statutory benefits enacted by Congress that are designed and meant to apply to all federal prisoners. §§ 3621; 3624. The attached exhibit clearly shows that Petitioner has been designated as ineligible for access to programming that once completed would make him eligible for reduction in sentence and placement in a facility that prepares him for re-entry into society.

Petitioner submits that the B.O.P., by placing him in his current location which does not even provide the required programs, has effectively cut off any and all chances he has to complete and qualify for the reductions as provided for by law.

2

The Residential Release Program begins approximately 30 months from the projected date of release. A prisoner, when transferred to a facility, cannot request a transfer until 18 months has passed. In transferring Alvarez to his current location where no access to programming is available and any request for a transfer would not be potentially approved until he had less than 24 months remaining on the sentence, it is clear that his rights are being violated and it is deliberate on the part of the Respondents, who acted in a knowing manner.

The Court has at times suggested that the "administrative procedures remedies" need to be exhausted before a Petition for Relief can be filed. However, Petitioner submits that such procedure applys only to rules and regulations that are imposed and implemented by the prison itself, and that appealing a rule or regulation that is not implemented by the prison would be futile since it is not within their authority or jurisdiction to make changes to that rule or regulation.

As such, the internal administrative remedies procedure does and cannot apply to the issues at hand, since it was a person or agency other than the prison who has sought to usurp the power of Congress by implementing rules that are contrary to the plain intent of the laws enacted. In such an instance, it is only to the Court that a petitioner can turn to for assistance when attempting to exhaust "available remedies" would clearly be futile.

In Castro-Cortez v. INS, 239 F.3d 1037 (9th Cir. 2001), the Court held that exhaustion was not a jurisdictional pre-requisite of a § 2241 petition, and that failure to exhaust administrative remedies before pursuing habeas corpus review "did not divest the court of jurisdiction". Brown v. Rison, 895 F.2d 533 (9th Cir. 1990). The exhaustion of administrative remedies is not required when the question of adequacy is for all practical purposes identical with the merits of a plaintiff's lawsuit. Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689 (1973).

Additionally, exhaustion is not required if a plaintiff claims relief or compensation for a deprivation of civil rights that has already occurred. Whitner v. Davis, 410 F.2d (9th Cir. 1969), and it is beyond the authority of the administrative agency to declare the regulations as unconstitutional and therefore clearly inadequate. Houghton v. Schafer, 392 U.S. 639, 88 S.Ct. 2119 (1968); Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407 (1971).

When a claimant seeks to have a legislative act declared as unconstitutional and the administrative remedy would leave standing the constitutional question, exhaustion is not required. Public Utilities Commission v. U.S., 355 U.S. 534, 78 S.Ct. 446 (1958). In addition, courts do not require exhaustion where it would be, as in this case, futile to comply with administrative remedies because it is clear that the claim would be rejected. City Bank Farmers Trust v. Schnader, 291 U.S. 24, 54 S.Ct. 259 (1934); Montana National Bank v. Yellowstone County, 276 U.S. 499, 48 S.Ct. 331 (1928).

4

Petitioner submits that the Respondents have conspired to usurp the power and authority of Congress by implementing rules and regulations that deny statutory benefits afforded to all federal inmates, and that such action is illegal and unconstitutional. Congress did not differentiate between citizen and non-citizen prisoners in any of its statutes, and while allowing for discretion in the implementation of its laws, Congress did not provide allowance for outright denial of benefits to an entire class of prisoners.

The Supreme Court held in Padilla v. Kentucky, that the imposition of collateral consequences unrelated to the conviction is a violation if the defendant was not aware of such consequences. Petitioner submits that the rules and regulations impose collateral punishment which violates the Constitution and its mandate that there be no unequal treatment of similarly situated persons.

A court's duty is "to give effect, if possible, to **every clause and word** of a statute." Montclair v. Ramsdell, 107 U.S. 147, 2 S.Ct. 391 (1882). This Court has suggested that the statute allows the Director of the B.O.P. to exercise discretion with regards to the statutory benefits of §§ 3621 and 3624. However, it is clearly stated that the Director of the Bureau of Prisons **"shall ensure"** that a prisoner spends a portion of time not to exceed one year, under conditions that would prepare him for re-entry into society.

The word "shall" when used in statutes is ordinarily a word of command. Anderson v. Yungkau, 329 U.S. 482, 67 S.Ct. 428 (1947), quoting Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818 (1935).

5

Throughout the statutes, Congress employed the words "federal prisoner" and did not specify a difference between benefits for U.S. citizen prisoners and non-citizen prisoners. When Congress acts and omits a reference to certain words or phrases, it is assumed that they acted intentionally.

The word "ensure" means to make certain that something actually occurs and there is no room for discretion in these words in the statute as enacted by Congress. This Court has in the past implied that the Director of the B.O.P. has exercised his discretion in the denial of benefits to individual inmates, without any actual proof or reasons for the denial.

Alvarez submits that the only reason stated in writing (attached), is the "detainer" placed by the Respondents that disallows him from receiving the benefits of the statutes. This is in of itself a violation of the Speedy Trial Act § 3161; I.A.D.A., which specifically enacted to prevent authorities from castigating inmates and denial of benefits while incarcerated. Alvarez has sought removal of this "detainer" without success so far.

§ 3621(b) states that there should be no favoritism given to prisoners of high social or economic status and it seems clear that Congress did not intend to segregate prisoners based on any other factor than their criminal history or current crime. The Supreme Court has agreed with this contention. Lopez v. US.

Alvarez  submits that  according to B.O.P Program Statement 5325.06 which refers to § 571.10(6), the term "detainee" refers to non-citizen (alien) prisoners who has finished serving a state, local, or federal sentence and is being held past his or her release date for immigration purposes.

§ 571.10(7) states that all inmates committed to B.O.P. custody are to participate in the Residential Release Program, except those who have a public safety factor of deportable alien. However, since such status cannot be assigned to Alvarez (he does not meet the criteria) and is not determined until after the completion of his sentence, it cannot be used to deny current benefits.

According to B.O.P. Program Statement 5331.01 which addresses criteria and procedures for early release pursuant to § 3621(e), Item 5(c) states that INS Detainees, Contract Boarders, Inmates with Prior Violent Convictions, Prior Early Release Grant, Inmates with Current Conviction for Violent or Excluding Crime, Parole Eligible Inmates, and District of Columbia Inmates are all ineligible for early release. Alvarez submits that he does not fit any of these categories and denial of benefits is a violation of his civil and constitutional rights.

The Code of Federal Regulations § 550.58 further defines the inmates who are held to be ineligible for early release and there is nothing in the plain language of the statute that would permit interpretation that allows denial of the benefits sought by Since such claims affect the execution of the sentence and may be raised under §2241, US v. Cleto, 956 F.2d 83; Rublee v. Fleming, 160

Even if the Bureau of prisons does indeed have the discretion to determine what successful completion of the program means, based on its own criteria, its regulations in 28 C.F.R. Subpt. F, §550.50 et seq., clearly defines the inmates who are to be deemed excludable from eligibility for early release. Petitioner does not fall under any of those categories defined therein.

H.R. Rep. 103-32, 103rd Cong., ist Sess. (1993) vested authority to the B.O.P. to determine which offenses are to be considered violent for the purposes of § 3621(e) and therefore not appropriate for early release. An agency's failure to afford an individual safeguards under its own regulations may result in the invalidation of the ultimate administrative procedures. Alamo Express Inc. v. US, 613 F.2d 96 (5th Cir. 1980).

An action that inevitably affects the duration of a sentence might violate a liberty interest created by statute. Sandin, 515 U.S. 487, 115 S.Ct. 2293. While the B.O.P. may have some discretion pursuant to § 3621 because there is no "mandatory language" therein, it is clear from the language of § 3624(c) which directs that the "Director of the B.O.P **shall ensure**" that this is the language of command.

The Court has stated that according to Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532 (1976) that more severe prison rules or desirability of jobs does not implicate a 14th Amendment violation. However, it is not the rules, regulations, or privileges that are being challenged herein but the denial of statutory benefits.

8

Once Congress created such interest by enacting §§ 3621; 3624, due process protections attach to the decision to revoke or deny such interest. The Supreme Court has held that creation of a protected liberty interest is established with sufficiently mandatory discretion-limiting standards or criteria to guide the decision makers, as in this case with words such as "shall ensure" and "qualification eligibility criteria". Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741 (1983); Lewis v. Thigpen, 767 F.2d 252 (5th Cir. 1985); Green v. McKaskle, 788 F.2d 1116 (5th Cir. 1986).

The sole standard for a state created liberty interest claim is that an inmate must show that "particularized standards or criteria guide the decision makers", Olim, supra, and that these criteria are sufficiently mandatory in nature. Hewitt, 459 U.S. 470, 103 S.Ct. 870. Petitioner has shown this to be the case.

The only other factor that the Court must consider is whether the prison's decision substantially affect the length or **nature** of a prisoner's confinement, e.g. affecting good time credits. Wolff, 418 U.S. 556, 94 S.Ct. 2975; Green v. Holtz, 442 U.S. 7, 99 S.Ct. 2104. Hewitt also establishes that there can be the requisite impact upon a prisoner's incarceration for that person to have a liberty interest, even though the terms of confinement are not radically modified in length or nature.

Petitioner submits that the government created a substantive liberty interest in the expectation that a given offense would be met with only certain types of punishment and that greater

punishment has been imposed and as such the officials have also further violated substantive rights. Jackson v. Cain, 864 F.2d 1235 (5th Cir. 1989).

Petitioner submits that he posseses some right or justifiable expectation rooted in law that he will not be subjected to harsher conditions **except** upon mis-behavior or upon the occurrence of other specified events. Montayne v. Haymes, 427 U.S. 236, 96 S.Ct. 2543 (1976).

The Supreme Court has held that a non-statutory right of action exists against federal officials who violate the Fourth Amendment. Bivens, 403 U.S. 395, 91 S.Ct. (2004), and Petitioner submits this complaints requesting injunctive relief from a violation of his constitutional rights. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773 (1946). As previously stated, Petitioner is not complaining of conditions of confinement but rather the denial of statutory benefits to a certain class of prisoners.

In determining whether a change in conditions of imprisonment implicates a prisoner's retained liberty interest, the relevant question is whether the change constitutes a sufficiently "grevious loss" to trigger the protection of due process. Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254 (1980); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593 (1972).

Applying the Meacham and Montayne principles in Vitek v. Jones, the Supreme Court held that the transfer of an inmate from a prison to a mental hospital did implicate a liberty interest. Placement

in a mental facility "was not within the range of conditions of confinement to which a prison sentence subjects an individual" because it brought about "consequences" (like in this case wherein deprival of treatment programs and placement in a facility that prepares Petitioner for re-entry into society and a potentially lengthier sentence) qualitatively different from the punishment characteristically suffered by any person convicted of a similar crime." Id. at 493, 100 S.Ct. at 1264.

Petitioner submits that the Court must compare the treatment of the particular prisoner with the customary habitual treatment of the prison population as a whole. The institutional norm is the general prison population and the statutes all reflect the words "federal inmate". If there is an adverse change that affects all **federal prisoners** as part of the daily operations of the B.O.P., then there is no deprivation of a constitutionally protected liberty.

However, if the prisoner or a class of prisoner is singled out for disparate treatment, and if the disparity is sufficiently severe, as in this case, then his liberty is at stake. Petitioner submits that he has a liberty interest in early release and preparation for re-entry into society "derived solely from the existence of a system that permits criminal offender such benefits." Greenholtz, 442 U.S. 1, 99 S.Ct. 2100 (1979) in support.

Prison regulations provide evidentiary support for the conclusion that transfers affect a constitutionally protected

interest in liberty but they do not create that interest. Any deprivations imposed in the course of daily operations of the institution are likely to be minimal when compared to the release from custody at issue herein. <u>Hewitt v. Helms</u>, 459 U.S. 460, 103 S.Ct. 864 (1983).

An inmate's classification determines where he is **best** situated within the prison system and is a dynamic process that considers the individual, his history, changing needs, the resources and facilities available to the institution, the other inmates, the exingencies of the community, and any other relevant factors. It **never inflicts punishment!**

On the contrary, even the imposition of stricter classification is intended to be in the best interest of the inmate, the prison, and the community. In short, classification is a continuing evaluation of each individual to ensure that he is given **optimum** placement in the prison system.

Whether it is called banishment, exile, or deportation, compelling a person to "quit a city, place, or country for a specified period of time or life, has long been considered to be a unique and severe deprivation." <u>US v. Ju Toy</u>, 198 U.S. 253, 25 S.Ct. 644 (1905).

Congress authorized funding for the B.O.P. to house and rehabilitate federal inmates and it did not specify where and how such should occur and it is evident from the action of the Bureau that they can and do rely on non-federal entities to provide these services.

Petitioner submits that if private prisons can be trusted to provide housing, medical, and food service to federal inmates in a variety of locations with minimal oversight by the Bureau of Prisons, then so too can halfway house and rehabilitation programs be outsourced, and that the Bureau has no evidence that argues to the contrary.

The classification system that designates the Petitioner to this particular level of facility is imposed by the B.O.P. and not the prison itself and as such, the prison authorities have no authority or ability to apply their administrative procedures to such policies or regulations and any petitions to them would be clearly futile. Petitioner attempted to grieve an issue directly with the B.O.P. and it was rejected with the reason that such issues cannot be addressed to the B.O.P. directly.

While this Court may defend the actions of the Respondents and claim that the Fifth Circuit and the REAL ID ACT prevents it from addressing removal orders, Petitioner submits that there is a distinct difference between a "removal order" and a "detainer" and that there are seperate statutes and case law that address each of them. All that is necessary is to review Black's Law Dictionary to see how much of a difference exists in the two issues. Petitioner **is not attacking a "removal order"** for the record.

## CONCLUSION

This is a § 2241 Petition for relief addressing constitutional violations of the Petitioner's rights, due process, and liberty interest expectation created by statute. It is not an attack on a removal order since such does not exist at this time.

Petitioner submits that the available administrative remedies are inapplicable to the issues under attack and that pursuit of such would be futile and that when an administrative remedy is inadequate, the inmate should be excused from the exhaustion requirement. Miller v. Stanhope, 636 F.2d 991 (5th Cir. 1998).

Petitioner submits that before the Court dismisses the action for failure to exhaust remedies, process should issue and the defendants should be required to answer and make an appropriate motion and that any remedy that plaintiff failed to exhaust should be identified. Miller v. Stanhope, supra.

The complaint should not be dismissed for failure to state a claim unless it can be proven beyond all doubt that the plaintiff can prove no set of facts that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99 (1957); Matthews v. US, 456 F.2d 395 (5th Cir. 1972).

If the plaintiff's complaint can be read to include allegations that the B.O.P. administrative procedures itself violates the plaintiff's due process rights, exhaustion of the very remedies complained of may not be required. Fuentes v. Roher, 519 F.2d 379

(2nd Cir. 1975); <u>Finnerty v. Cowen</u>, 508 F.2d 979 (2nd Cir. 1974). Administrative agencies have neither the power nor the competence to pass on the constitutionality of the administrative action since the agency is not called upon to determine facts or to apply its expertise. That is a job left to this Honorable Court.

The actions of the Respondents are deliberate and have been the source and cause of severe deprivations and possible grievous loss to the Petitioner. The restriction on applying for transfer to another facility and the timeframe for completion and the qualification for the benefits being denied to Petitioner is a direct result of the Respondents' actions.

The imposition of a "detainer" for extraordinary length of time in order to deny access to benefits is a clear violation of the IADA compact signed by the United States and approved by Congress. § 3161. The Act was clearly designed to prevent any interference with a prisoner's participation in treatment or other rehabilitative programs. IADA §2, Art. 1; <u>US v. Mauro</u>, 436 U.S. 340, 98 S.Ct. 1834.

The Fifth Circuit has determined that this Court does have jurisdiction to act in this matter and Petitioner submits that he has clearly alleged that the administrative procedures are inadequate and futile to comply with and seeks intervention by the court for civil and constitutional violations that have already occured, and continue to violate his due process and liberty interest expectations.

15

Submitted to this Honorable Court in an effort to find some form and application of law and justice on this 27th day of January, 2012.

Gustavo Alvarez-Frayier

C.I. Reeves III

P.O. Box 2038

Pecos, TX 79772

73786-280

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was mailed to the Clerk of the Court, US District Court for the Western District of Texas, 410 S. Cedar Street, Pecos, TX 79772 via first-class US mail postage prepaid on this 27th day of January, 2012.

Gustavo Alvarez-Frayier

73786-280

16



Clerk of the Court
US District Court
Western District of Texas
410 S. Cedar Street
Pecos, TX 79772

Gustavo Alvarez-Frayier
C.I. Reeves III
P.O. Box 2038
Pecos, TX 79772
73786-280